UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

vs.                                                                                  Case Number:  24-cr-00075

THOMAS RICHARD POOLER, Jr.

      Defendant.

_____/

## SENTENCING MEMORANDUM

COMES NOW the Defendant, THOMAS POOLER, by and through undersigned counsel and submits this Sentencing Memorandum for this Court's consideration. Though the United States Sentencing Guidelines don't apply, Mr. Pooler requests this Court to review the circumstances of his case pursuant to 18 U.S.C. § 3553 and impose a sentence of probation.

## STATEMENT OF FACTS

1. On January 5, 2021, Thomas Pooler and Angel Villanueva drove from Florida to Washington D.C. in Mr. Pooler's truck.

2. While in Washington D.C., Mr. Villanueva and Mr. Pooler stayed in a hotel in Alexandria, Virginia.

3. On the morning of January 6, 2021, Mr. Villanueva and Mr. Pooler—along with others in the crowd—marched to the U.S. Capitol.

4. At approximately 2:26 p.m., Mr. Pooler entered the U.S. Capitol building with Mr. Villanueva through the Senate Wing Doors. Mr. Pooler walked into the Rotunda and stayed in that room for one minute. After leaving the Rotunda, Mr. Pooler walked through Statuary Hall and stayed in a Statuary Hall corridor for approximately ten minutes.

5. At approximately 2:41 p.m., after spending about ten minutes inside the Statuary Hall corridor, Mr. Pooler walked to the East Stairs and left the building at approximately 2:54 p.m.

6. In the short time Mr. Pooler was in the building he did not engage in any violent or destructive behavior.

7. Mr. Pooler did not engage with any law enforcement officials either physically or audibly, nor did he enter any offices or private areas within the capitol building.

8. Mr. Pooler did not damage, deface, or destroy anything within or outside the building during his walk and short stay inside the building.

9. Upon being contacted by law enforcement regarding his involvement in the January 6, 2021, riot, Mr. Pooler engaged the services of undersigned counsel who immediately contacted Assistant United States Attorney Michael Gordon regarding Mr. Pooler's case.

10. Mr. Gordon was unfamiliar with Mr. Pooler's name at that time, and we agreed that if he received information suggesting Mr. Pooler was going to be arrested, we would engage in discussions regarding the nature and circumstances of Mr. Pooler's self-surrender to authorities.

11. Thereafter, Mr. Gordon contacted undersigned counsel regarding Mr. Pooler's impending charges, and we commenced discussions regarding a plea and dates for a debriefing.

12. Mr. Pooler met with agents and Mr. Gordon to debrief, after which a discussion ensued regarding the nature of the charges and the circumstances of Mr. Pooler's agreement to plead and accept responsibility for his actions on January 6, 2021.

13. Mr. Pooler has been cooperative and truthful with authorities regarding involvement in the demonstration and trespass onto capitol grounds on January 6, 2021.

14. Mr. Pooler gave FBI agents a detailed account of his travel to and from Washington, D.C., retracing each step he took inside and outside of the Capitol building. He also admitted to the authenticity of photographs and videos taken of him inside the Capitol.

15. In addition, Mr. Pooler provided verification of the identity of Mr. Villanueva through photographs and videos presented at his interview with the agents.

## MEMORANDUM OF LAW

**RATIONALE FOR PROBATION**

    **I.    The Court has the Discretion to Impose a Term of Probation**

Under Section 3552, sentencing courts are "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81 (1996)). Congress has identified four "purposes" of sentencing: *punishment, deterrence, incapacitation, and rehabilitation*. 18 U.S.C. § 3553(a)(2). To achieve these ends, §3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors, including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established ... ;

(5) any pertinent [Sentencing Commission] policy statement ... ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

Against this backdrop of factors, Mr. Pooler submits the appropriate sentence is a term of probation.

  **II.** **An Examination of the § 3553 Factors**

  The following sections analyze the § 3553 factors against the factual backdrop of Mr. Pooler's case. Such an analysis is critical because it underscores the inherent necessity that a sentence of probation be imposed.

**1. Nature and Circumstances of the Offense**

  In early January 2021, Mr. Pooler drove from Florida to Washington, D.C. to attend then President Trump's political rally on January 6, 2021. Following the rally, he followed a huge crowd of to the United States Capitol Building. Mr. Pooler entered the Senate Wing Doors to the Capitol Building at approximately 2:26 p.m. There is video of him walking by the House Wing Doors, then exiting out of the East Doors at approximately 2:54 p.m. While there were literally thousands of people around and inside the Capital Building, Mr. Pooler knew he did not have permission to enter the building. He deeply regrets his participation in the disturbance at the Capitol on January 6, 2021. His actions on January 6, 2021, did not involve the destruction of government property or physical violence against law enforcement. He was only in the Capitol Building for about 29 minutes.

## 2. History and Characteristics

### A. Childhood

Mr. Pooler was born in Denver, Colorado on March 16, 1978. After he was born his father disengaged from the family and became unemployed and itinerant. Mr. Pooler did not visit his father on a regular basis and when he did, he was always supervised by another member of the family. During his formative years Mr. Pooler lived in many different locations including New Orleans, Tampa and Denver as his mother tried the best she could to support her family without a husband and father to her son. Because Mr. Pooler moved around a lot in his childhood with his mother, he saw his father once every few years. Mr. Pooler's father was not favorably looked upon by either side of his family and he never developed a relationship with his father who ultimately passed away when Mr. Pooler was 24 years old. Ultimately Mr. Pooler graduated from high school in Tampa and received a Bachelor of Arts in Business Administration from the University of South Florida. During Mr. Pooler's late teens and early twenties, he had minor brushes with law enforcement, but since he met and ultimately married his wife, Erin Pooler, he has been a hard-working husband and father. Mr. Pooler has two daughters who are currently in High School with his eldest scheduled to graduate on May 18, 2024. Because he did not have a father figure as a child, Mr. Pooler has maintained a very high level of attention to his children. He has made certain that his daughters have maintained a level of financial and emotional stability and makes certain they are aware of how much he loves and appreciates them. His children still live at home and his eldest daughter desperately wants her father to be present during her final year in high school before she goes off to college and starts her life.

### C. Professional and Personal Life

Mr. Pooler has worked hard to build his business mending screens for pool enclosures. Prior to the 2020 pandemic Mr. Pooler employed sixteen people and had a thriving business.

During the pandemic, Mr. Pooler was required to downsize his business and has maintained the business through trying times with the help of his wife who is also his business partner. To make ends meet, he was also a licensed captain for commercial fishing charters in the Tampa-Bay area and has won fishing competitions. He is considered a reliable and professional fishing guide for local and tourist fisherman. Mr. Pooler also breeds dogs in addition to his screen and aluminum business. He has a Florida State Certified Building Contractor License for which he took two years of classes and testing while working full time. His companies operate under various names including T.R. Pooler Incorporated d/b/a Reliable Screens, SuperFrenchies.net and Tampa Bay Offshore Fishing. While he has given up his captain's license, he still maintains his two other businesses with his wife doing various managerial, secretarial and customer service functions within the businesses.

The family businesses have allowed Mr. Pooler to maintain a comfortable living environment for his family and a stable home environment for his children. Mr. Pooler has been happily married for 19 years and has two beautiful daughters that are the center of his universe. His entire purpose throughout his married life has been to provide for his family in a manner that reflects stability and reliability for his wife and children. He has striven to provide the love and stability that he did not have growing up and his greatest regret is that his daughters have been fraught with the possibility of their father going to jail. It is against this backdrop that Mr. Pooler requests this court to judge his conduct on January 6, 202 within the context of his much broader positive life experiences and the good he has accomplished.

D. Character and Acts of Goodwill and Charity

As demonstrated in the letters in Exhibit A, Mr. Pooler has compassion for the struggles of others as evidenced by the trove of letters attesting to Mr. Pooler's good works. His kindness

to others is certainly a character trait that the Court should factor into determining a fair and just sentence.

In 2009 Mr. Pooler was boating off the coast of Florida near Caladesi Island when he observed a helicopter drop from the sky into the Gulf of Mexico. Mr. Pooler jumped off a moving boat and swam to the helicopter and rescued two individuals by swimming them back to shore. Mr. Pooler has always been motivated to live by the motto "Always do the right thing." Unfortunately, Mr. Pooler fell short of his motto having been caught up in the moment on January 6, 2021.

Mr. Pooler has provided letters of support from various individuals who have known Mr. Pooler for enough time for him to have had a positive impact in their lives. There are thirteen letters attached. Upon review of the letters a few statements stood out among a very generous and complimentary group of recommendations.

"[H]ard worker, committed family man, and trusted friend."

"[G]ood nature, integrity, and reliability"

"a man of faith and is as hard working as they come."

"[W]e are so very grateful for his friendship."

"[A] strong work ethic and are raising their children to be great contributors to society."

"[A]n individual of exceptional character and integrity"

"[W]e can attest to his admirable qualities and trust him 100% with our children and home."

"Tom has consistently demonstrated honesty and integrity in his personal relationships and business relationships."

"He has a strong sense of duty, which applies to his business, family, and community."

There are many more attestations to Mr. Pooler's good works within these letters. These quotes are just a sampling of the positive statements made by numerous individuals who have come to know Mr. Pooler in different circumstances. Some have known Mr. Pooler since childhood, others have recently met Mr. Pooler.  The common theme for each person across the spectrum from professional acquaintances to personal friends, old and new, is that Mr. Pooler is honest, kind, helpful and trustworthy, who has meticulously paid his taxes and grown his business year after year.  This is hardly a man who would benefit from incarceration. In fact, his attributes and accomplishments put him squarely within the heartland of middle-class America for which he should be proud.  This single aberrational act which was manifested under unique and historical circumstances should not be a Scarlett letter defining a life which has been up to this point unremarkably normal and law abiding.

**E. Lesser Degree of Culpability than Others**

While it is understood that Mr. Pooler has been caught in a very large net with others being much more culpable, it is also acknowledged that there are others whose behavior was of a lesser degree.  Mr. Pooler understands that his actions were inappropriate and more importantly illegal. He is remorseful and ashamed that his actions caused disrepute to himself, his family, and his country.  Mr. Pooler is a patriot and understands that the greatness of this country relies upon our democratic ideals and the peaceful transition of power from one administration to the next. His remorse shows no bounds, and his greatest sadness is that his actions were in fact unpatriotic and did a disservice to this great country.  Mr. Pooler has expressed his remorse and understanding of the gravity of his actions as this process has progressed.  That said, Mr. Pooler's actions were not violent, nor were they destructive.  Mr. Pooler trespassed into the capitol

building for a short period of time and then exited without incident.  His culpability on a continuum of responsibility and seriousness is at the lowest of those charged.  As a result, Mr. Pooler requests this court recognize his minimal culpability as it relates to others charged with similar offenses and sentence him to a period of probation.

3. <u>The Need for the Sentence Imposed</u>

**A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

Mr. Pooler immediately began discussing his acceptance of responsibility without the benefit of reviewing Discovery.  Even at this juncture, Mr. Pooler, nor his attorney has had the benefit of reviewing any meaningful Discovery in this matter save those snippets of video and photographs shown to Mr. Pooler during his debrief with the F.B.I. agents. As a result, it is difficult to assess the magnitude and breadth of criminal activity committed on that day. Obviously, Mr. Pooler and undersigned counsel are well aware of the facts and circumstances from news articles and sentencing matrixes of individuals that have previously been sentenced. Based upon those facts and circumstances and the plethora of coverage from all sides of the debate, those that were violent, destructive or decided to steal items within the capitol building have been punished more severely than those who marched and entered the capitol building.  Mr. Pooler's sentence of probation without incarceration would clearly establish a sentencing continuum that reflects the seriousness of his actions as they compared to others involved in similar behavior.

**B. To afford adequate deterrence to criminal conduct**

A punishment of imprisonment is not necessary to further the § 3553 factor of general deterrence since there is no correlation between punishment and reductions in crime. See Gary Kleck and J.C. Barnes, <u>Deterrence and Macro-Level Perceptions of Punishment Risks:  Is There</u>

a"Collective Wisdom"?, 59 Crime & Delinquency 1006, 1031-33 (2013).  Kleck and Barnes' study concludes:

> "[t]here is generally no significant association between perceptions of punishment levels and the actual levels of punishment that the criminal justice system achieves. This in turn implies that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms, because the fundamental link between actual punishment levels and perceptions of punishment levels appears to be weak to nonexistent."
> Id. at 1031.

The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence.  See U.S. Dept. of Justice, Nat'l Inst. of Justice, Five Things About Deterrence (July 2014).  In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter punishment. See Id.  In the absence of a deterrent effect, Jacob submits that a sentence of imprisonment or jail is not necessary in his case.

**C. to protect the public from further crimes of the defendant;**

It most likely does not need exposition or criminal studies providing empirical data regarding the lack of recidivism of individuals squarely within category 1 of the sentencing guidelines to assert that Mr. Pooler is very unlikely to reoffend. Aside from Mr. Pooler's minimal criminal history which can only be recognized as youthful indiscretions occurring over 25-30 years ago, his behavior heretofore has been of a law abiding, and honest citizen working with integrity and responsibility to provide for his family. Even if Mr. Pooler received a fine, he would likely never reoffend.  In short, the very act of charging Mr. Pooler was sufficient to deter him from further criminal conduct without any further punishment.  It is an understatement to suggest that Mr. Pooler will never be on the wrong side of the law again, no matter what sentence is ultimately decided.

As previously stated, given Mr. Pooler's demographic information and lack of any meaningful prior record, he is not a danger to the community. Mr. Pooler does not support any political or non-political ideology that motivated some individuals to riot on January 6th. His sentencing, therefore, has no effect on any future deterrence of similar violence. While there are other cases associated with the day January 6, 2021, that may involve accusations of other defendants' involvement in domestic terrorism, militia groups, left-wing groups, right-wing groups, or other extremist-type groups that are of concern to federal law enforcement agencies, this Defendant is not a part of any of any group that promotes the use of violence to achieve a political end. No evidence supports the claim that Mr. Pooler was or is a member of any group that utilizes violence as a tactic to achieve social change. There are no real concerns about a need for community protection or perceived offender dangerousness in this case and, therefore, no punishment need be assessed using that reasoning.

**D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

A significant § 3553(a) sentencing consideration is the need to provide defendants with correctional treatment in the most effective manner. See § 3553(a)(2)(D). Mr. Pooler is a successful, self-employed, businessman. He is married with two children and maintains a stable home. Mr. Pooler is not addicted to drugs or alcohol, nor does he have any psychological issues that require treatment. Thus, he would not benefit from treatment in a custodial setting.

**4. The Kinds of Sentences Available**

A violation of 40 U.S.C. § 5104(e)(2)(D) carries a maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a term of probation of not more than five (5) years, pursuant to 18 U.S.C. § 3561(c); a fine of not more than $5,000,pursuant to 18 U.S.C. §

3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

A violation of 40 U.S.C. § 5104(e)(2)(G) carries an additional maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a term of probation of not more than five (5) years, pursuant to 18 U.S.C. § 3561(c); a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. In addition, pursuant to 18 U.S.C. § 3013(a)(1)(A)(ii), Mr. Pooler is required to pay a special assessment.

**5. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

There have been many sentences for which Mr. Pooler can point to support his contention that similar conduct has been punished without the necessity of incarceration. However, a true understanding of the backgrounds and unique characteristics of those individuals cannot be ascertained by a mere reading of the government's request and the ultimate sentence. Suffice it to say that there have been a substantial number of defendants sentenced without incarceration similarly charged and situated to Mr. Pooler. An incarcerative sentence for Mr. Pooler would be at the most severe end of the sentencing spectrum for the behavior exhibited and the nature and extent of the charges he now faces. As a result, it is Mr. Pooler's contention that an incarcerative sentence would be outside the norm for his conduct.

**6. The Need to Provide Restitution to Any Victims of the Offense.**

Restitution of $500 is applicable in this case and Mr. Pooler will pay this amount immediately after he is sentenced.

**CONCLUSION**

Mr. Pooler respectfully requests this court consider his actions within the context of his life and achievements as a father, husband and entrepreneur. While he is remorseful for his actions, he is hopeful the court will look at his transgressions as serious but aberrational and that his hard work, loyalty, and good deeds provide a counterbalance for his behavior on January 6, 2021. Mr. Pooler respectfully requests this court fashion a sentence not greater than necessary to promote the interests of justice and sentence him to a period of probation.

## CERTIFICATE OF SERVICE

**THE UNDERSIGNED HEREBY CERTIFY** that the original of the foregoing has been furnished by Electronic Filing to Clerk of Court, U.S. District Court, District of Columbia and that e-mail notification of this filing will be sent to all interested persons on this March 18, 2024.

s/Serbo C. Simeoni
Serbo C. Simeoni, Esq.
1700 N. McMullen Booth Rd.
Suiter A-7
Clearwater, FL 33759
Telephone: (727) 799-3506
Facsimile:   (727)202-5014
Email: simeoni07@gmail.com
Florida Bar # 0921970
Counsel for Defendant,